IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| GENEVA YAZZIE,<br><br>  Plaintiff,<br><br>vs.<br><br>DEBRA MOYA, Principal of the Tobe Turpen Elementary School, in her individual and official capacities; RAYMOND R. ARSENAULT, Superintendent of GALLUP-McKINLEY COUNTY SCHOOLS, in his individual and official capacities; THE GALLUP-McKINLEY COUNTY SCHOOL DISTRICT; BRUCE TEMPEST (President of the Board), JOSEPH C. MENINI (Vice-President of the Board), CHEE SMITH JR. (Secretary of the Board), ANNIE DESCHENY, and GENEVIEVE JACKSON, in their individual and official capacities, members of THE GALLUP-McKINLEY COUNTY SCHOOL BOARD,<br><br>  Defendants. | No. 1:10-cv-00962-PJK-WDS |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Motion to

Dismiss filed December 21, 2010 (Doc. 11) and Plaintiff's Motion for Leave to

Amend Complaint filed February 11, 2011 (Doc. 31).  Upon consideration thereof, the court finds that the motion to dismiss is well taken and should be granted, but the motion for leave to amend is not is well taken and should be denied.

Background

Plaintiff brings this civil rights action against various school officials including an elementary school principal, school superintendent, and school board members, in their official and individual capacities, as well as against the school district itself.  42 U.S.C. § 1983.  Her claim is for loss of her fundamental parental rights and liberty in association with her child based upon due process guarantees of the Fourteenth Amendment.  Complaint (Doc. 1) ¶¶ 1, 33.  Plaintiff alleges a violation of substantive due process including interference with familial association.

Plaintiff's twelve year-old son (E.J.J.) committed suicide by hanging himself.  Id. ¶¶ 1, 15-16, 21.  At the time, he was a student in a Gallup, New Mexico elementary school.  Id. ¶¶ 16, 21.  According to the complaint, E.J.J. was the victim of extensive bullying which the Defendants failed to prevent, notwithstanding an anti-bullying policy.  Id. ¶¶ 21, 34, 36-37.  Plaintiff alleges that Defendants failed to inform her of the situation, although they were aware generally of the risk of suicide resulting from bullying.  Id. ¶¶ 21-22.  She contends that Defendant Moya (school principal) knew that her son was the

victim of bullying and failed to inform her, meaningfully investigate, or take protective actions.  Id. ¶ 38.  The remaining Defendants, including Defendant Arsenault (school superintendent), allegedly did not make the safety of students a priority and encouraged a de facto policy of ignoring such threats which proximately caused the constitutional violations in this case.  Id. ¶¶ 39-40.  These violations include a deprivation of her constitutionally protected parental right of association, companionship, and society of her child.  Id. ¶¶ 33, 41.

## Discussion

In deciding a motion to dismiss, the court views the facts pled in the light most favorable to the Plaintiff to determine whether a plausible, not merely conceivable, claim for relief is presented.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-1951 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Defendants seek dismissal of the complaint on several grounds: (1) the substantive due process claim for failure to protect the child is foreclosed under DeShaney v. Winnebago County of Department of Social Services, 489 U.S. 189 (1989), because no special relationship exists between the school Defendants and the child, nor did the school Defendants create the danger, and the Defendants' actions do not shock the judicial conscience; (2) no affirmative act supports the interference with familial relationships claim; (3) the Supreme Court has abolished supervisory liability; (4) school entity liability is foreclosed for lack of an underlying constitutional violation, let alone a custom or policy resulting in a

constitutional violation; and (5) the individual Defendants are entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from damages so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Given a qualified immunity defense, a Plaintiff must establish that (1) the complaint indeed contains facts alleging a violation of a constitutional right, and (2) the right was clearly established at the time of a defendant's alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009).

The complaint does not establish a constitutional violation based upon substantive due process, either on the theory of failure to protect E.J.J., or for interference with familial relationships. The due process clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. It applies to actions by State actors, but not a generalized failure to protect citizens from private danger or violence. DeShaney, 489 U.S. at 197.

There are two exceptions to the general rule that a state's failure to protect an individual from danger does not violate due process—the "special relationship" exception and the "danger creation" exception—but neither applies here. Compulsory school attendance does not constitute a "special relationship"

like custody or incarceration which might trigger a duty to protect. See id. at 198; Maldonado v. Josey, 975 F.2d 727, 732 (10th Cir.1992). This is true even when an assault by fellow students is foreseeable. Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d 991, 994-95 (10th Cir. 1994). Moreover, the child in this case tragically took his own life outside of school further suggesting a lack of a duty arising from a "special relationship." Armijo ex rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1261-62 (10th Cir. 1998) ("The fact that Armijo ended his life after he was 'released' by [a school counselor] bars any liability under the special relationship doctrine.").

Nor did the school affirmatively place the child in a dangerous situation which might trigger a duty to protect. To succeed on a "danger creation" theory, the Plaintiff must establish: (1) the school district and its agents created or exacerbated the danger, (2) Plaintiff was a member of a limited, specifically defined group, (3) a defendant's conduct put the Plaintiff at a substantial risk of serious, immediate, and proximate harm, (4) the risk was known and obvious, (5) the defendants actions were reckless, in conscious disregard of the risk, and (6) the conduct alleged shocks the conscience. Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1126 (10th Cir. 2008). Essentially, Plaintiff argues that the school district Defendants created the danger (extreme bullying which might result in suicide) by assuring parents through an anti-bullying policy that they were managing the risk, yet they were actively

promoting an environment of extreme bullying by failing to enforce the policy. Doc. 24 at 9-10.

This case differs from Armijo where the decedent (a special education student) committed suicide after school officials suspended him and then took him home, knowing that he was distraught, had threatened suicide, and had access to firearms. 159 F.3d at 1264. Given the decedent's vulnerability and the known risks, the court concluded that a jury could find that the school had a role in knowingly creating the dangerous situation. Id. Accordingly, the Tenth Circuit affirmed the denial of qualified immunity.

Here, in contrast, no concrete facts suggest that the Defendants created or exacerbated the danger, let alone knew about it until after the fact. Although Plaintiff relies heavily upon the anti-bullying policy, mere non-compliance with state statute or regulation, or local school policy, does equate to a substantive due process claim. See Collins v. City of Harker Heights, 503 U.S. 115, 128-30 (1992); Rost, 511 F.3d at 1126. What is required is affirmative conduct directed at the plaintiff which creates an immediate threat of harm, inherently of limited range and duration. Ruiz v. McDonnell, 299 F.3d 1173, 1183 (10th Cir. 2002); Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1074 (D.N.M. 2010) (allegations that school policies lulled the plaintiffs into a false sense of security cannot substitute for affirmative conduct). That is lacking here. The fact that school officials made poor choices or were negligent is not the type of

intentional or reckless danger creation that shocks the conscience. Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996). The court agrees with the Defendants that Plaintiff has not satisfied any of the six elements above.

The interference with familial relationships claim fares no better. To be sure, a parent has a liberty interest in the care, custody and control of his or her minor children. Troxel v. Granville, 530 U.S. 57, 65-66 (2000) (plurality); Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs., 569 F.3d 1244, 1253 (10th Cir. 2009). A claim for interference with familial relationships balances the interests served by state intrusion against an individual's right to familial association. Griffin v. Strong, 983 F.2d 1544, 1547-48 (10th Cir. 1993).

Before balancing, such a claim requires an intent to deprive or interfere with a protected relationship. Trujillo v. Bd. of Cnty. Comm'rs, 768 F.2d 1186, 1189-90 (10th Cir. 1985). In other words, there must be some facts which would support the inference that defendants "directed their conduct at the familial relationship." Lowery v. Cnty. of Riley, 522 F.3d 1086, 1092 (10th Cir. 2008). Although the complaint alleges that Defendants "undertook actions and inactions, and maintained a policy" of intentionally interfering with parent-child relationships by not providing full information about students' emotional and physical well-being, Complaint (Doc. 1) ¶ 23, this general formulation simply lacks the specific facts necessary to show an intent to deprive Plaintiff of her protected relationship with her son. Plaintiff argues that the anti-bullying policy

contains a provision requiring the school district to inform parents of a student who is the target of bullying, Doc. 24 at 7, but this fact is not pled, and even though it is suggested as an amendment, mere non-compliance with policy simply does not push this claim across the line from the conceivable to the plausible. Nor do facts that the bullying policy is not a top priority or that there were six participants in the bullying which was severe and pervasive. Id. at 8.  Indeed, Plaintiff claims that the reason that bullying was not disclosed was not because of an intent to interfere with parent-child relationships, but so as to prevent the Defendants from "looking bad" and to protect their reputations. Id. at 11; Complaint (Doc. 1) ¶¶ 23, 36-37.

   Although Defendants contend that supervisory liability in the § 1983 context no longer exists, Plaintiff responds that the basis of liability is the actions and inaction of each Defendant.  Doc. 24 at 12.  Section 1983 liability requires causation and personal involvement, and this complaint falls far short.  See Iqbal, 129 S. Ct. at 1949.  Respondeat superior liability cannot be a basis for liability under § 1983.  Id. at 1948.  The failure to become aware of the bullying and act to prevent it simply is not enough for a substantive due process claim, either based upon a duty to protect or interference with familial relationships.

   Given the lack of a constitutional violation vis-a-vis the individual Defendants, the claim against the entity Defendant on the basis of an unconstitutional custom or policy cannot be maintained.  See Estate of Larsen ex

rel. Sturdivan v. Murr, 511 F.3d 1255, 1264 (10th Cir. 2008).

Plaintiff also seeks leave to amend to clarify the claims in the complaint and to add an additional defendant, Kenneth Williams, individually and his official capacity, as the disciplinary officer of the school district.  Doc. 31-1 (Amended Complaint) ¶ 11.  The amended complaint alleges that the principal (Defendant Moya) and Defendant Williams failed to notify the Plaintiff, investigate, report, and suspend perpetrators of bullying according to policy.  Id. ¶¶ 27-30, 38-39, 49-50.  The amended complaint alleges that the policy was a sham, just to provide cover.  Id. ¶¶ 20, 28, 35.  As a result, the Defendants created a zone of danger for suicide due to bullying which was the proximate cause of the child's suicide.  Id. ¶ 38.  The amended complaint also contains the bullying policy, the state administrative regulation requiring such a policy, a newspaper report of the suicide, and a police report subsequent to the incident.  While the proposed amended complaint does provide more specific allegations, it still does not cure the legal deficiencies discussed above, specifically facts tending to show "danger creation" or any facts showing a specific intent to interfere with the Plaintiff's relationship with her son.  Although leave to amend should be granted liberally, Fed. R. Civ. P. 15(a)(2), particularly at the early stages of a case, denial of leave to amend is appropriate when it would be futile.  See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1288 (10th Cir. 2008).  That is the case here notwithstanding the tragedy of the suicide.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

(1) Defendants' Motion to Dismiss filed December 21, 2010 (Doc. 11) is granted.

(2) Plaintiff's Motion for Leave to Amend Complaint filed February 11, 2011 (Doc. 31) is denied.

Judgment will be entered accordingly.

DATED this 11th day of March 2011, at Santa Fe, New Mexico.

```
_____/s/ Paul Kelly, J._____
        United States Circuit Judge
           Sitting by Designation
```

Counsel:
A. Jonas Rane, Brusuelas & Rane, LLC, Albuquerque, New Mexico, for Plaintiff.

Kevin M. Brown and Christopher W. Westenberger, Brown Law Firm, Albuquerque, New Mexico, for Defendants.